UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBORAH HAYES,

                                        Plaintiff,

                                                        Case # 17-CV-6354-FPG
v.

                                                        DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

Deborah Hayes brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act.[1] ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On June 26, 2014, Hayes protectively applied for DIB with the Social Security Administration ("the SSA"). Tr. 178-79. She alleged disability since October 1, 2010, due to a stroke, Raynaud's syndrome, acclimatization problems, acute sinusitis, lateral epicondylitis, De

---

[1] On September 23, 2014, Hayes also applied for Supplemental Security Income ("SSI") under Title XVI of the Act. *See* Administrative Record ("Tr.") 79, 180-92. On October 7, 2014, state agency personnel determined that Hayes was disabled as of June 1, 2014 for purposes of her SSI claim. Tr. 65-66, 79. The ALJ found that the new evidence submitted in connection with Hayes's SSI claim did not warrant a materially different outcome from that reached at the reconsideration level, and she identified no error of law in reaching that determination. Tr. 79. Accordingly, the ALJ's decision solely addressed Hayes's DIB claim. *Id.*

Quervain's tenosynovitis, a left rotator cuff injury, and arm, hand, and sinus surgeries. Tr. 79, 219-20. Hayes later amended her alleged onset date to September 25, 2013. Tr. 265. On December 29, 2015, Hayes and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge Yvette N. Diamond ("the ALJ"). Tr. 14-54. On January 27, 2016, the ALJ issued a decision finding that Hayes was not disabled within the meaning of the Act. Tr. 79-89. On April 19, 2017, the Appeals Council denied Hayes's request for review. Tr. 1-4. Thereafter, Hayes commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ's decision analyzed Hayes's claim for benefits under the process described above. At step one, the ALJ found that Hayes had not engaged in substantial gainful activity since the amended alleged onset date of September 25, 2013 through her date last insured of December 31, 2013.  Tr. 81.  At step two, the ALJ found that Hayes has the following severe impairments: degenerative joint disease of the left shoulder, bilateral De Quervain's tendonitis, chronic sinusitis, patent foramen ovale, and residual effects of a transient ischemic attack.  Tr. 81-83.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment.  Tr. 83-84.

Next, the ALJ determined that Hayes retains the RFC to perform light work[2] with additional limitations.  Tr. 84-87.  Specifically, the ALJ found that Hayes can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk, and sit for six hours in an eight-hour workday; can occasionally push and pull with the upper extremities; can frequently reach in most directions but cannot reach overhead; can frequently handle and occasionally finger with the right upper extremely and can occasionally handle and finger with the left upper extremity; and cannot have concentrated exposure to respiratory irritants.  Tr. 84.  At step four, the ALJ relied on

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

the VE's testimony and found that Hayes cannot perform her past relevant work. Tr. 88. At step five, the ALJ relied on the VE's testimony and found that Hayes can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 88-89. Specifically, the VE testified that Hayes can work as a furniture rental clerk, children's attendant, and fruit distributor. Tr. 89. Accordingly, the ALJ concluded that Hayes was not "disabled" under the Act. *Id.*

## II.    Analysis

Hayes contends that remand is required because the ALJ failed to consider all of her impairments at step two of the disability analysis and improperly weighed the medical opinions. ECF No. 10-1 at 13-19; ECF No. 13. These arguments are addressed in turn below.

### A.    Step Two

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical and/or mental ability to do basic work activities. *Id.* at §§ 404.1520(c), 404.1521. It is the claimant's burden to present evidence that establishes impairment severity, *id.* at § 404.1512(c), and she must demonstrate "that the impairment has caused functional limitations that precluded [her] from engaging in any substantial gainful activity for one year or more," *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citations omitted).

The mere presence of an impairment, or the fact that the claimant has been diagnosed or treated for an impairment, is insufficient to render a condition "severe." *Bergeron v. Astrue*, No. 09-CV-1219 MAD, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quotation marks and citation omitted). Rather, severity is determined by the functional limitations that an impairment

imposes. *See Tanner v. Comm'r of Soc. Sec.*, No. 5:15-CV-577 (TJM/ATB), 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016). The ALJ will find an impairment "not severe" if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on the claimant's ability to work. *Perez*, 907 F. Supp. at 271; *see also* S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

If the ALJ fails to make a severity determination as to an impairment, it is a harmless error if the ALJ finds other severe impairments, and thus continues the disability analysis, and considers all impairments in the RFC determination. *See Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015); *see also* 20 C.F.R. § 404.1545(a)(2).

Here, Hayes asserts that the ALJ erred when she failed to consider that Hayes had lateral epicondylitis and that she is small in size. It is true that the ALJ did not mention either of these conditions at step two, however, she found other severe impairments and continued the disability analysis. Tr. 81-89. Accordingly, the Court will discuss each of these conditions and evaluate whether the ALJ considered the resulting limitations in the RFC determination, which would make the failure to discuss them at step two a harmless error.

### 1. Lateral Epicondylitis

Lateral epicondylitis "is an inflammation of the tendons that join the forearm muscles on the outside of the elbow." *See* Tennis Elbow (Lateral Epicondylitis), OrthoInfo, *available at* https://orthoinfo.aaos.org/en/diseases--conditions/tennis-elbow-lateral-epicondylitis/ (last visited June 19, 2018). Overuse damages the forearm muscles and tendons, which leads to pain and tenderness on the outside of the elbow. *Id.*

Medical providers noted that Hayes had lateral epicondylitis on several occasions. *See, e.g.*, Tr. 502, 510, 516, 596. As mentioned previously, however, a diagnosis is not enough to

render an impairment severe; rather, the impairment must cause functional limitations. Here, the record reveals that elbow and forearm pain affected Hayes's grip and that she had pain with wrist and finger extension and strength deficits in the arms. Tr. 509, 516, 596. Additionally, orthopedist Jeffrey Jones, M.D. advised her to "minimize overhead lifting." Tr. 375, 450, 500, 589.

Although the ALJ did not discuss Hayes's lateral epicondylitis at step two, her RFC analysis clearly considered Hayes's elbow and forearm pain, and the RFC determination adequately accounts for the resulting limitations. Tr. 84-89. The ALJ's decision notes that Hayes alleged pain in her elbows and forearms and extensively discusses the medical evidence related to Hayes's arm and hand impairments. Tr. 84-85. The ALJ discussed, for example, treatment notes with dexterity and grip strength findings and upper extremity flexion, abduction, and rotation findings. Tr. 85. The RFC limits Hayes to only occasional pushing and pulling with the upper extremities, precludes overhead reaching, and restricts handling and fingering on both sides (Tr. 84), which adequately accounts for the limitations that stem from Hayes's lateral epicondylitis.

Accordingly, because she considered Hayes's elbow and forearm pain and the resulting limitations in assessing the RFC, the ALJ's failure to specifically discuss lateral epicondylitis at step two is a harmless error.

### 2. Small Size

Hayes argues that her small size affects her functioning. Specifically, she points to treatment notes from Dr. Jones indicating that she is "very petite" and therefore does not have enough strength for "repetitive and heavy activities." Tr. 510. Dr. Jones also noted that she is "extremely short-statured, and hence things that might be done at a non-overhead level for most people require overhead positioning of her arms due to her size." Tr. 375, 450, 500, 589. Dr.

Jones also opined, however, that Hayes can "maintain a reasonable level of comfort and function" by "avoiding overhead and repetitive lifting." Tr. 381, 456.

The regulations provide that an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 (effective until Mar. 26, 2017). Although the record describes Hayes as "very petite" and "extremely short-statured," there is no evidence that she has an impairment from an "anatomical abnormality" that "can be shown by medically acceptable clinical and laboratory diagnostic techniques." There is also no evidence that Hayes's small size "has caused functional limitations that precluded [her] from engaging in any substantial gainful activity for one year or more." *Perez*, 907 F. Supp. 2d at 272.

Nonetheless, the ALJ properly considered and accounted for the limitations that allegedly stem from Hayes's small size. The RFC limits her to light work, which requires lifting and carrying only 20 pounds occasionally and 10 pounds frequently, and precludes her from reaching overhead. Tr. 84. Accordingly, because she adequately considered Hayes's strength and overhead limitations in assessing the RFC, any error in the ALJ's failure to discuss Hayes's small size at step two is harmless.

### B.  Medical Opinions

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. § 404.1527(c). Unless a treating source's opinion is given controlling weight,[3] the ALJ must consider the following factors when she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the

---

[3] Here, the ALJ gave only "limited weight" to Hayes's treating physician's opinion. Tr. 87.

treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

Hayes argues that the ALJ should have afforded more weight to the opinions of consultative examiner Seema Khaneja, M.D. and orthopedist Dr. Jones. Hayes also asserts that the ALJ should not have relied on the opinion of her treating physician John Garneau, M.D. to determine how much she could lift and carry. For the reasons that follow, the Court finds that the ALJ properly evaluated these opinions.

### 1. Dr. Khaneja

On October 1, 2014, Dr. Khaneja opined that Hayes has "moderate" limitations in prolonged standing, sitting, and walking; repetitive bending, twisting, turning, and reaching; pulling, pushing, lifting, and carrying heavy objects; and kneeling, squatting, and climbing stairs. Tr. 657. She also opined that Hayes should avoid exposure to smoke, dust, and other respiratory irritants. *Id.*

The ALJ afforded Dr. Khaneja's opinion "little weight" because she did not examine Hayes until nearly one year after the relevant period, which the ALJ found diminished the opinion's applicability. Tr. 87. Although Hayes wanted the ALJ to adopt Dr. Khaneja's restrictive opinion, her "reliance on evidence demonstrating a worsening of her condition after [her date last insured] is of little value" because she was required to demonstrate that she was disabled as of December 31, 2013. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order).

The ALJ also discounted Dr. Khaneja's opinion because she found that the description of "moderate" limitations did not "provide specific guidance" as to Hayes's maximum functioning.

Tr. 87. This was a proper reason to discount Dr. Khaneja's opinion, because the ALJ is entitled to reject an opinion that is not well-explained. *See* 20 C.F.R. § 404.1527(c)(3).

Finally, the ALJ discounted Dr. Khaneja's opinion because Hayes testified that, during the period at issue, she did not have significant posture or ambulation restrictions, which the ALJ found inconsistent with Dr. Khaneja's assessed limitations. Tr. 87. This was a proper reason to discount Dr. Khaneja's opinion, because the ALJ is entitled to reject an opinion based on its consistency with the record as a whole and any other contradicting factors. *See* 20 C.F.R. § 404.1527(c)(4), (6).

Although the ALJ discounted Dr. Khaneja's opinion, the RFC is consistent with several portions of that opinion. Dr. Khaneja opined, for example, that Hayes has "moderate" limitations in pulling, pushing, lifting, and carrying heavy objects, and the RFC restricts Hayes to light work with only occasional pushing and pulling. Tr. 84, 657. Dr. Khaneja also opined that Hayes should avoid exposure to smoke, dust, and other respiratory irritants, and the RFC prevents her from having concentrated exposure to respiratory irritants. *Id.*

### 2. Dr. Jones

On February 26, 2013, Dr. Jones opined that Hayes was totally disabled. Tr. 693. The ALJ afforded "little weight" to this opinion because it is an issue reserved to the Commissioner. Tr. 87.

A medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, No. 15-CV-702-FPG, 2016 WL 4523187, at *4 (W.D.N.Y. Aug. 30, 2016) (citation omitted); 20 C.F.R. § 404.1527(d)(1). An opinion that the claimant is disabled, however, "must

never be ignored." S.S.R. 96-5p, 1996 WL 674183, at *3 (S.S.A. July 2, 1996). Instead, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(4) (the ALJ will give more weight to an opinion that is consistent with the record as a whole).

Here, the ALJ did not ignore Dr. Jones's opinion that Hayes was disabled; instead, she specifically noted that it was an issue reserved to the Commissioner and then discussed evidence relevant to that opinion. Tr. 87. The ALJ pointed out that physical therapy notes described 4/5 muscle strength and 130 degrees of left shoulder flexion, which the ALJ found to suggest some restrictions in functioning. *Id.* (citing Tr. 374). She also noted that Hayes described decreased De Quervain's symptoms and that Dr. Jones noted decreased impingement, which the ALJ found to suggest some work ability inconsistent with Dr. Jones's opinion. *Id.* (citing Tr. 498).

Although the ALJ discounted Dr. Jones's opinion that Hayes was disabled, the RFC is consistent with Dr. Jones's treatment notes that indicate lifting, gripping, and overhead reaching limitations. Specifically, the RFC limits Hayes to light work with only occasional pushing and pulling, no overhead reaching, and restricted handling and fingering. Tr. 84.

### 3. Dr. Garneau

On June 15, 2015, Hayes's treating physician Dr. Garneau completed a Physical Residual Functional Capacity Questionnaire wherein he opined, among other things, that Hayes can lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 684-88. Hayes does not argue that the ALJ violated the treating physician rule; rather, she asserts that the ALJ should not have relied on Dr. Garneau's opinion as to how much she could lift and carry because he did not specifically treat her bilateral upper extremity and shoulder issues.

The ALJ's decision summarized Dr. Garneau's opinion and afforded it "limited weight." Tr. 87. In accordance with the regulations, the ALJ recognized that Dr. Garneau treated Hayes since 2011, which gives him "good insight" into Hayes's impairments. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2) (the ALJ will generally give more weight to a treating source's opinion because he can "provide a detailed, longitudinal picture" of the claimant's impairments). The ALJ also pointed out, however, that Dr. Garneau did not provide this opinion until nearly 18 months after the relevant period. Tr. 87. As discussed above, an opinion rendered after the date last insured may be "of little value." *See Vilardi*, 447 F. App'x at 272. Furthermore, Dr. Garneau indicated that Hayes's pain was not a significant contributing factor, which the ALJ found inconsistent with Hayes's description of constant upper extremity pain. Tr. 87 (citing Tr. 240); *see* 20 C.F.R. § 404.1527(c)(4) (the ALJ is entitled to discount an opinion based on its consistency with the record as a whole).

As to lifting and carrying, which is the portion of the opinion that Hayes argues the ALJ should not have relied on, the ALJ found Dr. Garneau's assessment consistent with neurology records that described intact sensation and full power. Tr. 87 (citing Tr. 315). The ALJ was entitled to rely on this opinion because she found it consistent with other record evidence and because, as Hayes's treating physician, Dr. Garneau was well-positioned to evaluate all of Hayes's impairments. *See* 20 C.F.R. § 404.1527(c)(2), (4). Thus, the ALJ limited Hayes to light work in accordance with Dr. Garneau's prescribed lifting and carrying limitations. The ALJ further supported this finding by summarizing the medical evidence related to Hayes's heart disease and transient ischemic attack, and concluding that those findings supported restricting Hayes to light work where she would lift no more than 20 pounds. Tr. 86.

The Court recognizes that the ALJ discounted all of the medical opinions of record. Although "the RFC must be supported by medical opinions, it is ultimately the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," because she is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

Here, the ALJ did not adopt any opinion in its entirety, however, several RFC findings were consistent with portions of each opinion. The ALJ also explicitly discussed and weighed each opinion pursuant to the SSA's regulations and tied the medical evidence to each RFC finding. Tr. 85-86. Accordingly, for all the reasons stated, the ALJ did not err when she weighed the medical opinions.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 20, 2018
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court